IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| SAMUEL W. MORRISSEY and TONI K. MORRISSEY, | : : | CIVIL ACTION |
| Plaintiffs, | : : | |
| | : | No. 14-05193 |
| v. | : : | |
| STATE FARM FIRE & CASUALTY COMPANY, | : : : | |
| Defendant. | : | |

# **M E M O R A N D U M**

**Stengel, J.**  December 17, 2014

This homeowner's insurance dispute was removed to this court based on diversity of citizenship. Plaintiffs Samuel and Tori Morrissey assert several state law claims against their insurer State Farm. State Farm moves to dismiss two counts: the bad faith claim and the state consumer law claim. For the reasons explained below, I will grant the defendant's motion.

### **I.  Background[1]**

On December 12, 2012, the plaintiffs' residence located at 107 West Franklin Street, Womelsdorf, Berks County, Pennsylvania was damaged by a fire, making it uninhabitable. The plaintiffs had a homeowners' insurance policy with State Farm for the Franklin Street residence with coverage limits of $220,000 for the house, $165,000 for

---

[1] The information contained in this section is taken from the Amended Complaint unless otherwise noted. See Doc. No. 11.

1

personal property, and the actual value of the loss of use sustained.[2] The plaintiffs filed an insurance claims for damage to the actual home, damage to their personal property in the amount, and costs for alternative housing while the home was being repaired.[3]

The defendant investigated the plaintiffs' claims. On April 5, 2013, the defendant took a sworn statement of Plaintiff Samuel W. Morrissey. On September 13, 2013, the defendant took a second sown statement of Mr. Morrissey. On October 7, 2013, State Farm sent the plaintiffs a letter indicating it had concluded its investigation and extended insurance coverage to the plaintiffs.[4] On December 30, 2013, the plaintiffs received a check for $111,886.50 made payable to the plaintiffs, their lawyer, and Bank of America, N.A. This check was for the claim on damage to the home itself.[5]

Mr. Morrissey made repeated requests for Bank of America to endorse the check so that repair work could begin on the residence. Bank of America refused because they were no longer the holder of the mortgage. On January 21, 2014, plaintiffs' counsel returned the settlement check to the defendant and requested that it be re-issued to the plaintiffs, plaintiffs' counsel, and Nationstar Mortgage Co.[6] On January 22, 2014, the State Farm adjuster Mary McClenaghan responded by letter to plaintiffs' counsel, stating in part, "Bank of America was the mortgage company at the time of loss and State Farm

---

[2] There was also coverage for "dwelling extension up to" for $22,000. What exactly this provision covered is not entirely clear from the complaint. This provision, however, does not appear to be included in this dispute.

[3] The plaintiff attached the insurance policy to his complaint. However, parts of it are difficult to read so I cannot ascertain all of its terms from that copy. See Doc. No. 11, Ex. A1, A2, and A3.

[4] See Doc. No. 11, Ex. C.

[5] See id., Ex. D.

[6] See Doc. No. 11, Ex. E.

Insurance Company's Underwriting Department does not permit the changing of the mortgage companies because Nationstar was not the mortgage company at the time of the loss."[7] McClenaghan indicated that she had asked Bank of America to endorse the settlement check, yet they again refused.

Sometime after January 27, 2014, plaintiffs' counsel set up a conference call between himself, Ms. McClenaghan, and Nationstar. During the call Nationstar explained to Ms. McClenaghan what was needed to process the settlement check addressed to Nationstar, not Bank of America. On April 9, 2014, plaintiff's counsel received the settlement check from the defendant and was able to process it.

On March 27, 2014, the plaintiffs filed a "Writ of Summons" and "Plaintiffs' Notice of Records Deposition in Aid of Drafting a Complaint," after receiving a letter that State Farm would terminate their alternative housing at the end of July. The latter motion for pre-complaint discovery was litigated in state court in Berks County, Pennsylvania. Eventually, the state court judge directed the plaintiffs to file their complaint without the requested discovery by August 15, 2014.[8] The plaintiffs filed their complaint in Berks County on August 11, 2014. The defendant removed the action to this court on September 10, 2014 based on diversity of citizenship under 28 U.S.C. § 1332. On September 18, 2014, the plaintiffs moved to remand to state court. I denied this motion. The plaintiffs amended their complaint in response to a motion to dismiss part of

---

[7] See id., Ex. F.

[8] See Plaintiffs' Memorandum of Law in Opposition to Dismissal of Amended Complaint, Doc. No. 19 (the brief is not paginated so a more specific pin cite is unavailable). The Honorable Timothy Rawley heard oral argument from both parties on June 10, 2014 before rendering this decision. He found that the plaintiffs had enough information to file their complaint.

the original complaint. The defendant then moved to dismiss Counts V and VI of the amended complaint.[9]

## II. Discussion[10]

### a. Bad Faith Claim (Count VI)

The plaintiffs claim, *inter alia,* that the defendant violated Pennsylvania's bad faith statute by: 1) issuing the settlement check over one year after the fire occurred; 2) delaying reissuing the check for three and a half months "for no valid reason;" 3) filing "boilerplate objections to Plaintiff's discovery in this action for the purpose of preventing the drafting of a Complaint to get an advantage in this case;" 4) arbitrarily refusing to settle their claims; and 5) breaching fiduciary duties and other state laws.[11] The plaintiffs claim these actions prejudiced their claims against the defendant.

---

[9] The plaintiffs also assert three other counts. Count I states that the defendant breached the insurance contract by only paying $33,772 of the $133, 161.61 claim towards the personal property claim. The plaintiff alleges that the Insurance Policy requires the defendant to pay the personal property claim within sixty (60) days of the receipt of proof of loss and have not done so. The personal property inventory worksheet indicates the plaintiff submitted itemized documentation of the lost personal property on May 1, 2013, June 30, 2014, May 26, 2014, and/or May 26, 2013. See Doc. No. 11, Ex. B1-B6.

Count II alleges that the defendant improperly terminated their alternative housing costs. On March 25, 2014, the plaintiffs received a letter from State Farm stating that their alternative housing coverage would terminate at the end of July 2014. After that point, State Farm indicated the plaintiffs would be responsible for their housing costs. The plaintiffs' monthly rent for their temporary housing is $3000. Furnishings for the temporary housing cost $1000 a month. See Doc. No. 11, Ex. G.

Count IV (sic) asserts that a $12,500 charge for debris removal was not paid. That invoice was sent to the defendant on July 1, 2014. See Doc. No. 11, Ex. H.

[10] Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332. The plaintiffs are Pennsylvania residents. The defendant is an Illinois corporation. See Doc. No. 26, 27. From what has been pled, the amount in controversy appears to be in excess of $75,000. See, e.g., St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."). Venue is appropriate because the events giving rise to the claim occurred in this district.

[11] In their response to the motion to dismiss the amended complaint, the plaintiffs also claim that the defendant failed to provide initial discovery and seem to imply bad faith for this reason. Yet, this allegation was made on October 20, 2014; this discovery was due on October 22, 2014. They also imply that this motion to dismiss was late-coming in the litigation (i.e. shortly before the Rule 16 conference). These allegations provide little support for a bad

Pennsylvania's bad faith statute allows a plaintiff to recover interest, punitive damages, court costs, and/or attorney's fees if an insurer has acted in bad faith in handling a claim.[12] In order to show bad faith, a claimant must ultimately establish by clear and convincing evidence both that: 1) the insurer lacked a reasonable basis for denying benefits; and 2) the insurer knew or recklessly disregarded its lack of reasonable basis. Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005) (citing Keefe v. Prudential Prop. & Cas. Ins. Co., 203 F.3d 218, 225 (3d Cir. 2000)). See also Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688-89 (Pa. Super. 1984). "Bad faith claims are fact specific and depend on the conduct of the insurer vis à vis the insured."[13] Condio v. Erie Ins. Exchange, 899 A.2d 1136, 1143 (Pa. Super. 2006)(citing Williams v. Nationwide Mutual Ins. Co., 750 A.2d 881, 887 (Pa. Super. 2000)).

---

faith claim. The plaintiffs timely filed an amended complaint (mind you, after they responded to the motion to dismiss). This motion to dismiss was filed timely after the complaint was amended. See Plaintiff's Memorandum of Law in Opposition to Dismissal of Amended Complaint, Doc. No. 19 (the brief is not paginated so a more specific pin cite cannot be provided); Doc. No. 11; Doc. No. 16.

[12] Pennsylvania's bad faith statute says:
   In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
      (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
      (2) Award punitive damages against the insurer.
      (3) Assess court costs and attorney fees against the insurer.
42 Pa.C.S.A. § 8371.

[13] In the insurance context, bad faith is defined as:
   *Insurance*. "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.
Terletsky, 649 A.2d at 688 (quoting Black's Law Dictionary 139 (6th ed. 1990))(citing Rottmund v. Continental Assurance Co., 813 F.Supp. 1104, 1108-09 (E.D. Pa. 1992); Coyne v. Allstate Ins. Co., 771 F.Supp. 673, 677-78 (E.D. Pa. 1991)).

Even after viewing all reasonable inferences in the light most favorable to the plaintiffs, I cannot find that the plaintiffs have sufficiently alleged that the defendant acted in bad faith. They have not provided factual information to show that the defendant lacked a reasonable basis for delaying payment of their benefits. They have not offered information about repeated attempts to negotiate with the defendant to which the defendant was non-responsive.[14] They offer no facts to explain why the defendant's delay in settling was "arbitrary." They have not indicated that the insurer's investigation was unwarranted or inadequate.[15] Instead, the plaintiffs simply assert that payment of benefits a year after the fire was unreasonable and that the defendant acted in bad faith by "arbitrarily failing and refusing to settle [their] claims in good faith." While "[d]elay is a relevant factor in determining whether bad faith has occurred," Kosierowski v. Allstate Ins. Co., 51 F.Supp.2d 583, 588 (E.D. Pa. 1999)(citing Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 234 (3d Cir. 1997)),[16] delay in itself is not a basis for a bad faith

---

[14] The failure of the insurer to communicate with the claimant may also be a basis for a bad faith claim. See Romano v. Nationwide Mut. Fire Ins. Co., 646 A.2d 1228, 1232 (Pa. Super. 1994) (citing 3 Appleman, Ins. Law & Practice § 1612 (1967 & Supp.1991)). See also Defendant's Motion to Dismiss, Doc. No. 16, Ex. C (Blockus, et al. v. State Farm Mut. Auto. Ins. Co., No. 11-cv-125, at *9-10 (M.D. Pa. Mar. 15, 2011))(finding dismissal appropriate when plaintiffs failed to show repeated efforts to communicate with defendant in order to negotiate settlement). Compare Padilla v. State Farm Mutual Automobile Insurance Co., No. 14–cv–2102, 2014 WL 3109999, at *4 (E.D. Pa. Jul. 8, 2014)(Stengel, J.)(allowing bad faith insurance claim to proceed when plaintiff alleged delayed settlement after several attempts to contact unresponsive defendant).

In fact, the complaint appears to show the opposite. Once the defendant's agent Ms. McClenaghan became aware that the settlement check was deficient, she not only tried to contact Bank of America herself but also worked with plaintiff's counsel and Nationstar to ensure that the deficiency was corrected. Her letter regarding the deficient check was written one day after plaintiffs' counsel returned the check, which was almost one month after the plaintiffs had received the check. During that one-month delay, it was Bank of America (who is not a party to this case), not the defendant, who refused to endorse the check after repeated requests to do so.

[15] An insurer's failure to investigate claims adequately may also show bad faith. See O'Donnell ex. Rel Mitro v. AllState Ins. Co., 734 A.3d 901, 906 (Pa. Super. 1999).

[16] See also Robbins v. Metropolitan Life Ins. Co. of Conn., No. 08-0191, 2008 WL 5412087, at *7 (E.D. Pa. Dec. 29, 2008)("[A] plaintiff can ultimately receive benefits from the defendant and still allege bad faith based on the

6

claim, if the insurer had a reasonable basis for the delay. See, e.g., O'Donnell ex rel. Mitro, 734 A.2d at 907-08; Post v. St. Paul Travelers Ins. Co., 691 F.3d 500, 523 (3d Cir. 2012). The plaintiffs have offered no facts to show that the defendant lacked a reasonable basis for delaying the plaintiffs' settlement. Even assuming that defendant acted unreasonably in delaying payment of benefits, the plaintiffs have not offered evidence of the second prong. They have not provided facts to show that the defendant knew or disregarded a lack of a reasonable basis.[17]

The plaintiffs' allegations that the defendant acted in bad faith during this litigation by filing "boilerplate objections to Plaintiff's discovery in this action for the purpose of preventing the drafting of a Complaint to get an advantage in this case" also do not show bad faith. Bad faith may extend to the misconduct of the insurer during the pendency of litigation. O'Donnell ex rel. Mitro, 734 A.2d at 906. See Babayan, 430 F.3d at 137. However, the defendant's objections to the plaintiff's request for pre-complaint discovery were not unreasonable.[18] The plaintiffs' allegation that these objections were meant to give the defendant an advantage are unsupported and merely conclusory.

---

temporary denial or suspension of benefits."); Kohn v. Unumprovident Corp., No. 2:04-cv-4929, 2008 WL 4787556, at *8 (E.D. Pa. Oct. 31, 2008)("[T]emporary denials or suspension of benefits can be actionable under the statute even if benefits are eventually paid.").

[17] Under the second part of the analysis, mere negligence or bad judgment does not constitute bad faith. Condio, 899 A.2d at 1143. However, recklessness on the part of the insurer can support a finding of bad faith. Polselli v. Nationwide Mut. Fire Ins. Co., 23 F.3d 747, 751 (3d Cir. 1994). Proof that an insurer's delay in payment was motivated by an improper purpose is not a required element. Klinger, 115 F.3d at 233. See also Greene v. United Services Auto. Ass'n, 936 A.2d 1178, 1191 (Pa. Super. 2007)(adopting the reasoning in Klinger and holding that a "'motive of self-interest or ill will' level of culpability is not a third element required for a finding of bad faith, but it is probative of the second element identified in Terletsky, i.e., 'the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim.'")(citations and quotation marks omitted)).

[18] This is especially true given that the state court judge accepted the defendant's argument that this request was a "fishing expedition" and was unnecessary for the plaintiffs to file their complaint. See Plaintiffs' Memorandum of

7

These "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a valid cause of action. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009)).[19] The plaintiff has failed to assert a plausible bad faith claim under Pennsylvania law.[20]

### b. UTPCPL Claim (Count V)

The plaintiffs support their Unfair Trade Practices and Consumer Protection Law (UTPCPL) claim with the exact same actions used to make out their bad faith claim. These allegations also fail to assert a plausible UTPCPL claim. Pennsylvania's UTPCPL allows a person "who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property" to bring a private action to recover the loss, attorney's fees, and costs.[21] The law is

---

Law in Opposition to Dismissal of Amended Complaint, Doc. No. 19 (the brief is not paginated so a more specific pin cite is unavailable).

Even assuming the objections were "boilerplate," this too would not be enough for a bad faith claim. See Sypeck v. State Farm Mut. Auto. Ins. Co., No. 3:12–CV–324, 2012 WL 2239730, at *3 (M.D. Pa. Jun. 15, 2012)(finding that defendant's use of a seemingly "meritless" defense was not bad faith).

[19] See, e.g., Sypeck, 2012 WL 2239730 at *3 (dismissing plaintiff's bad faith claim because it was supported "almost entirely with conclusory allegations using boilerplate language."); Atiyeh v. Nat'l Fire Ins. Co., 742 F.Supp.2d 591, 599-600 (E.D. Pa. 2010)(dismissing bad faith claim which only presents "'bare-bones' conclusory allegations");Defendant's Motion to Dismiss, Doc. No. 16, Ex. B (Bremme v. State Farm Mut. Auto. Ins. Co., No. 11-cv-2864, at *4 (E.D. Pa. Sept. 29, 2011))(dismissing bad faith claim which contained "nothing more than unsupported, threadbare assertions that Defendant unreasonably refused to settle Plaintiff's UM claim").

[20] The plaintiffs' allegation that the defendant acted in bad faith by "breaching fiduciary duties and other state laws" is also vague and unsupported. It is not even clear what fiduciary duties or state laws the plaintiffs are claiming have been violated as acts of bad faith.

[21] Pennsylvania's UTPCPL states:
(a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 31 of this act, may bring a private action to recover actual damages or one

designed to protect consumers from "fraud and unfair or deceptive business practices."[22] Commonwealth ex rel. Corbett v. People's Benefit Svcs., Inc., 923 A.2d 1230, 1236 (Pa. Commw. Ct. 2007) (citation omitted). "To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." Yocca v. Pittsburgh Steelers Sports, Inc., Inc., 854 A.2d 425, 438 (Pa. 2004). See also Hunt v. United States Tobacco Co., 538 F.3d 217, 221-22 (3d Cir. 2008).

The Third Circuit has made clear: "[i]n Pennsylvania, only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the [UTPCPL], and an insurer's mere refusal to pay a claim which constitutes nonfeasance, the failure to perform a contractual duty, is not actionable." Gardner v. State Farm Fire & Cas. Co., 544 F.3d 553, 564 (3d Cir. 2008)(quoting Horowitz v. Federal Kemper Life Assur. Co., 57 F.3d 300, 307 (3d Cir. 1995) (citations omitted)).[23]

Drawing all inferences in the light most favorable to the plaintiffs, the defendant's delays in first issuing of the dwelling check and then re-issuing the check may show

---

hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.
73 P.S. § 201-9.2.

[22] The statute also offers a number of different definitions for "unfair methods of competition" and "unfair or deceptive acts or practices." See 73 P.S. § 201-2.

[23] See also Gordon v. Pennsylvania Blue Shield, 548 A.2d 600, 604 (Pa. Super. 1988)("Nonfeasance alone is not sufficient to raise a claim pursuant to the Unfair Trade Practices and Consumer Protection Law."); MacFarland v. United States Fidelity & Guar. Co., 818 F.Supp. 108, 111 (E.D. Pa. 1993)("[T]he UTPCPL provides relief for misfeasance rather than nonfeasance. Failure to pay under an insurance contract constitutes nonfeasance."(citing Gordon, 548 A.2d at 604)); Klinger v. State Farm Mut. Auto. Ins. Co., 895 F.Supp. 709, 717 (M.D. Pa. 1995)("It is well established that an insurer's refusal to pay benefits to an insured is nonfeasance, and not actionable under the CPL."), aff'd, 115 F.3d 230 (3d Cir. 1997).

malfeasance or indicate improper performance of the contractual obligation.[24] However, the plaintiffs fail to show how they justifiably relied on the defendant's conduct to their detriment. See Hunt v. U.S. Tobacco Co., 538 F.3d 217, 222–23 (3d Cir. 2008). The plaintiffs also fail to allege any "fraudulent" or "deceptive" conduct on the part of the defendant during the settlement process of during the litigation.

The plaintiffs also argue the defendant's termination of their alternative housing coverage at the end of July 2014 was a UTPCPL violation. Even assuming that the defendant's termination of the plaintiffs' housing coverage was improper under their contractual provisions, it would be nonfeasance (i.e. failure to perform the contractual duty), not malfeasance (i.e. improper performance of the contractual duty).[25] The plaintiffs have also failed to state a plausible UTPCPL claim.[26]

## III. Conclusion

For the foregoing reasons, I will grant the defendant's motion to dismiss the plaintiff's bad faith claim (Count VI) and UTPCPL claim (Count V).[27]

---

[24] The defendant admits such a possibility in its motion to dismiss. See Doc. No. 16-3 at 7.

[25] The plaintiffs support this argument with Zaloga v. Provident Life and Acc. Ins. Co. of America, 671 F.Supp.2d 623 (M.D. Pa. 2009). In Zaloga, Judge Kosik did allow a UTPCPL claim on an insurance dispute to proceed past the motion to dismiss stage. Id. at 632-33. However, in that case, the plaintiff claimed that the insurer had approved his disability claim and then terminated payment for it later. Id. at 632. This case is distinguishable from the current case. The defendant gave the plaintiffs three months' notice that their alternative housing coverage would expire at the end of eighteen months. The plaintiffs do not allege anything "wrongful" or "deceptive" in the defendant notifying them of this termination nor do they assert detrimental reliance as a result of this coverage being terminated. Just because they had come to expect that their alternative housing would be covered does not necessarily mean that the termination of this coverage after a certain period of time would violate the UTPCPL.

[26] See Merrill v. State Farm Fire and Cas. Co., No. 12–1328, 2013 WL 588515, at *6-8 (W.D. Pa. Feb. 13, 2013)(dismissing UTPCPL claim regarding homeowner's insurance dispute because plaintiffs did not allege malfeasance or deception on the part of the insurer).

[27] I will dismiss these claims without prejudice. The plaintiffs have already amended their complaint once as a matter of course. This amendment came after the plaintiffs had already responded to the defendant's motion to

An appropriate Order follows.

---

dismiss the original complaint and, yet, the amendments did little to cure the factual deficiencies raised by the defendant. The defendant then filed a motion to dismiss the amended complaint, mooting the original motion to dismiss. From this standpoint, amendment of the complaint at this time would appear to be futile. As the matter proceeds on the breach of contract claim, sufficient facts may come to light to support these claims. At that time, the plaintiff may move for leave to amend the complaint and reassert these claims, assuming there is a factual basis for doing so.